UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRISTEN SONNTAG, as administrator of the estate of decedent James Sonntag, and on behalf of decedent's next of kin, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) ) | 21 C 4935 |
| ) | Judge Charles P. Kocoras |
| COOK COUNTY, Illinois, et al., ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants Cook County, Illinois ("Cook County") and Cook County Sheriff Tom Dart's Motion to Dismiss Plaintiff Kristen Sonntag's Complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the Motion in part.

## BACKGROUND

For the purposes of this Motion, the Court accepts as true the following facts from the Complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Sonntag's favor. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

Sonntag brings this action against Cook County, Sheriff Dart, unidentified Cook County Sheriff's Office employees, and unidentified Cook County health services employees to recover for the suicidal death of her husband James while detained at the Cook County Jail (the "Jail"). In 2016, James was diagnosed with post-traumatic stress disorder ("PTSD"), anxiety, and depression, and prescribed medication to treat these diagnoses. From September to November 2019, James was detained in the Jail while serving a 180-day sentence. During this detention, Sonntag says James suffered obvious symptoms of PTSD, anxiety, and depression, and was housed in the Jail's Residential Treatment Unit ("RTU") so he could receive mental health treatment. In November 2019, James was released from the Jail on probation. As a condition of probation, James was required to wear an electronic monitoring device on his ankle, as well as undergo mental health treatment.

On September 14, 2020, James was taken into custody for an alleged probation violation based on the quality of his participation in a court-ordered mental health program. Sonntag says unknown Cook County Sheriff's Office employees took James into custody from the courtroom and heard James' attorney tell the judge "this is going to kill this man to go back to custody" and "I don't know that he's going to survive this." James' bail was set at a $50,000 D-bond.

Sonntag alleges unidentified Cook County health services employees examined James for medical and psychiatric issues when taken into the Jail. Though the unidentified

2

Defendants had access to James' medical records from his 2019 detention and James told them of his diagnoses and suicidal ideations, they did not place him on suicide watch or assign him to the RTU.

James' father posted bail the same morning James was taken into custody. His father took the bond receipt to the courtroom where James was taken into custody and an unidentified Sheriff's Office employee told James' father that it was too late and James was already taken into the Jail. That evening, James' childhood friend went to the Jail to inquire why James had not been released. Several unidentified Sheriff's Office employees confirmed that James' bond had been posted but said that James was "not getting out any time soon."

On September 15, 2020, James' father returned to the courtroom where James was taken into custody. An unidentified Sheriff's Deputy refused to provide him with any information about James. The next morning, on September 16, 2020, James' sister, who is a police officer, went to the same courtroom. An unidentified Sheriff's Office employee also refused to give her any information about James or why he was not released 48 hours after bond was posted. That afternoon, James hung himself with a bedsheet and was found dead in his jail cell.

Based on these events, Sonntag claims: (1) due process violations under 42 U.S.C. § 1983 (Count I); unlawful detention under Section 1983 (Count II); a municipal liability claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (Count III); wrongful

3

death under the Illinois Wrongful Death Act, 740 ILCS 180/1, *et seq.* (Count IV); willful and wanton negligence (Count V); intentional infliction of emotional distress ("IIED") (Count VI); medical malpractice (Count VII); and indemnification (Count VIII). Defendants now move to dismiss under Rule 12(b)(6).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not supply detailed factual allegations, but it must supply enough factual support to raise its right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow. . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the. . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

4

## **DISCUSSION**

Defendants move to dismiss the Complaint in its entirety. We address each Count in turn.

## I.  Counts I and II

Defendants first argue Counts I and II—the due process and unlawful detention claims—must be dismissed because Sonntag does not allege the personal involvement of Sheriff Dart. In response, Sonntag clarifies she is not suing Sheriff Dart in any personal capacity, only his official capacity.

Sonntag's clarification undermines these claims against Sheriff Dart. Because she sues him only in his official capacity, it is a claim against the Sheriff's Office, a government entity that can only be held liable in a Section 1983 suit under *Monell*. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent"); *Wilson v. Civ. Town of Clayton, Ind.*, 839 F.2d 375, 380 (7th Cir. 1988) ("a municipality cannot be held liable under [Section] 1983 on a *respondeat superior* theory" but only for official policies under *Monell*).

Defendants next argue Counts I and II must be dismissed as an improper group pleading. While it is true that Sonntag groups the unidentified Defendants together, "dismissal of the claims against the unknown [Defendants] at this time is premature." *Guy v. Riverside Police Officers*, 1999 WL 675296, at *3 (N.D. Ill. 1999) (Williams, J.).

5

"[D]etermining the identities of unnamed defendants is a discovery matter," and Sonntag must add them as Defendants before the statute of limitations expires. *Id.* Under these circumstances, the Seventh Circuit says we should allow Sonntag the opportunity to engage in discovery to ascertain the identities of the unnamed Defendants. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Therefore, Defendants' argument is denied without prejudice and Counts I and II may proceed for discovery limited to ascertaining the identities of the unnamed Defendants. *See id.*

## II.   Count III

Defendants next argue Sonntag's *Monell* claim must be dismissed because she does not allege a widespread custom or practice. In other situations we would agree. This Court previously adopted several guiding principles in evaluating *Monell* allegations:

> First, generally, a "plaintiff needs to come forward with more than a handful of incidents." *Hamilton v. Osweego Cmty. Unit Sch. Dist. 308*, 2021 WL 767916 (N.D. Ill 2021) (citing *Wilson v. Cook Cnty.*, 742 F.3d 775, 780 (7th Cir. 2014)). Thus, a "practice is not widespread if it took place two, three, or four other times." *Id.* Additionally, any other incidents must be "similar to the situation at hand." *Id.* "The other incidents do not need to be identical, but they do need to be sufficiently similar to support an inference of a broader pattern. The greater the dissimilarity, the greater the skepticism that there is a single actionable municipal practice or custom." *Id.* Other courts in this District are also in accord with [these principles]. *See, e.g.*, *Amor v. John Reid & Assocs.*, 2021 WL 825609, at *5 (N.D. Ill. 2021) (Lee, J.); *Hutton v. City of Chi.*, 2021 WL 809731, at *3 (N.D. Ill. 2021) (Valderrama, J.) (collecting cases).

*Jackson v. City of Chi.*, 2021 WL 1056988, at *3 (N.D. Ill. 2021) (Kocoras, J.). However, because jail operators do not "get a 'one free suicide' pass," allegations of a single

violation of federal rights can trigger *Monell* liability "if the violation was a 'highly predictable consequence' of the municipality's failure to act." *Woodward v. Corr. Med. Servs. Of Ill., Inc.*, 368 F.3d 917, 929 (7th Cir. 2004).

Here, Sonntag alleges Defendants, among other things, did not have a policy for monitoring detainees for mental health problems. The Seventh Circuit has recognized "[j]ail managers who decided to take no precautions against the possibility of inmate suicide—to have no policy, for example no suicide-watch option—would be guilty of deliberate indifference in the relevant sense, . . . they would be ignoring a known and serious risk of death of persons under their control for whose safety they are responsible." *Boncher ex rel. Boncher v. Brown Cnty.*, 272 F.3d 484, 486 (7th Cir. 2001). Perhaps there was a policy to place an at-risk detainee in the RTU, but "[f]or all intents and purposes, ignoring a policy is the same as having no policy in place in the first place." *Woodward*, 368 F.3d at 930.

Sonntag also alleges Defendants failed to train their employees to recognize and prevent the risk of suicide by detainees. In *Woodward*, the Seventh Circuit held that a correctional facility's failure to train its employees on suicide prevention, which resulted in the death of an inmate, supported *Monell* liability even without evidence of any previous suicide. *Id.* at 927–29. Therefore, we conclude Sonntag sufficiently alleges a *Monell* claim under these circumstances. *See Bradford v. City of Chi.*, 2017 WL 2080391, at *4–5 (N.D. Ill. 2017) (Durkin, J.) (noting a plaintiff in a jail suicide case need not allege more

7

than one instance of suicide and denying motion to dismiss where the City of Chicago failed to monitor at-risk detainees). Accordingly, the Motion is denied for Count III.

### III. Count IV and V

Defendants next argue Sonntag fails to allege a wrongful death or negligence claim. To state a claim under the Illinois Wrongful Death Act, a plaintiff must allege: "(1) defendant owed a duty to the decedent; (2) defendant breached that duty; (3) the breach of duty proximately caused the decedent's death; and (4) that pecuniary damages occurred to persons designated under the Wrongful Death Act." *Rodgers v. Cook Cnty.*, 2013 IL App (1st) 123460, ¶ 31. Similarly, to state a negligence claim[1] under Illinois law, a plaintiff must allege "(1) the existence of a duty of care owed to the plaintiff by the defendant; (2) a breach of that duty, and (3) an injury proximately caused by that breach." *Guvenoz v. Target Corp.*, 2015 IL App (1st) 133940, ¶ 89.

Defendants say Sonntag's "conclusory allegations" do not establish the duty, breach, or causation elements of either claim. Dkt. # 13, pg. 12. We disagree. Under Illinois law, jailers owe a duty to prisoners to keep them safe and protect them from unnecessary harm and must exercise reasonable and ordinary care for the life and health of the prisoner. *See Johnson v. U.S.*, 2016 WL 3387156, at *10 (N.D. Ill. 2016) (quoting *Dezort v. Vill. of Hinsdale*, 35 Ill. App. 3d 703, 707 n.1 (2d Dist. 1976)).

---

[1] Sonntag brings her negligence claim under the Illinois Survival Act, 755 ILCS 5/27-6, which "allows a representative of the decedent to continue an existing cause of action after the decedent's death." *Rodgers*, 2013 IL App (1st) 123460, ¶ 29.

8

Here, Sonntag says James was in the custody of the Sheriff's Office who knew of James' medical needs. Those needs were ignored when James was not placed in the RTU, which lead to his suicide. Such allegations plausibly establish that James was owed a duty of care as a detainee and that duty was breached leading to James' death. *See Belbachir v. Cnty. of McHenry*, 726 F.3d 975, 980 (7th Cir. 2013) ("By depriving her for an indefinite time of any source of protection (including protection against herself) other than persons employed by or working at or managing the jail, the jail personnel became obligated by ordinary tort principles to provide her with reasonable care. . . . Neither the guards nor the members of the medical staff were involved in the decision to detain her; but they were her custodians, responsible therefore for her safety."). Accordingly, the Motion is denied for Counts IV and V.

## IV. Count VI

Defendants argue Sonntag's IIED claim must be dismissed because Sonntag does not allege each Defendant acted with extreme and outrageous conduct. To state an IIED claim under Illinois law, a plaintiff must allege: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (citing *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 20 (1992)). "To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go

9

beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Id.*

To the extent Defendants' argument is a recast of their group pleading argument, it is denied without prejudice as discussed above. And allegations that Defendants acted with deliberate indifference to serious medical needs are sufficient to support an IIED claim under Rule 8. *See, e.g.*, *Rice v. Wexford Health Servs., Inc.*, 2016 WL 8711490, at *6 (N.D. Ill. 2016) (Aspen, J.) (collecting cases). Sonntag alleges Defendants were, on multiple occasions, made aware of the likelihood of James' mental health issues and possible suicide; they ignored this information knowing it could result is severe emotional harm; and it did result in severe emotional harm. Therefore, the Motion is denied with respect to Count VI. *See id.*

## V.     Count VII

To state a medical malpractice claim under Illinois law, a plaintiff must allege: (1) the standard of care against which the defendant's conduct is measured (i.e. duty), (2) the defendant breached that standard of care, and (3) the breach was the proximate cause of the plaintiff's injury. *Piercy v. Whiteside Cnty., Ill.*, 2016 WL 1719802, at *8 (N.D. Ill. 2016). A plaintiff must also allege a physician-patient relationship. *Id.*

Defendants first contend Sonntag fails to allege a physician-patient relationship. "A physician's duty arises only when a clear and direct physician-patient relationship has been established." *Siwa v. Koch*, 388 Ill. App. 3d 444, 447 (1st Dist. 2009). "A physician-

patient relationship is established where the physician takes some affirmative action to participate in the care, evaluation, diagnosis or treatment of a specific patient." *Mackey v. Sarroca*, 2015 IL App (3d) 130219, ¶ 20. Here, Sonntag alleges James was treated by unidentified medical professionals who were employees of Cook County. These medical professionals performed medical and psychiatric evaluations on James. Though these allegations are minimal, we find Sonntag alleges the existence of a physician-patient relationship at this stage.

Defendants next argue Sonntag fails to plead a duty or the breach of that duty. Sonntag alleges: "the COUNTY Defendants had a duty to possess and apply the skill and care of reasonably well-qualified medical personnel in the same and similar circumstances." Dkt. # 1, ¶ 96. Defendants say this is a legal conclusion. In state court, the resolution of this issue would be simple—the standard of care is established by filing an affidavit under Section 5/2-622 of the Illinois Code of Civil Procedure at the same time the complaint is filed. *See* 735 ILCS 5/2-622. But in federal court, this affidavit is not required to be filed contemporaneously with the complaint but must be filed prior to summary judgment. *Young v. U.S.*, 942 F.3d 349, 351–52 (7th Cir. 2019).

Considering the notice pleading standard in federal court, we find Sonntag sufficiently alleges the existence of a duty. Put simply, the unidentified County Defendants owed James a duty of care based on the physician-patient relationship. Those Defendants allegedly breached that duty in willful disregard of James' condition, which

11

lead to his suicide. Thus, Sonntag has put Defendants on notice of the medical malpractice claim. The specific standard of care, and whether that standard was breached, is a fact question to be resolved at a later stage. Accordingly, the Motion is denied with respect to Count VII.

## VI.   State Law Immunity and Statute of Limitations

Finally, Defendants urge the Court to dismiss Sonntag's state law claims because they are entitled to immunity under the Illinois Local Governmental and Governmental Employees Tort Immunity Act (the "Tort Immunity Act"), 745 ILCS 10/1-101, *et seq.*, and because the claims against the unnamed Defendants are barred by the Tort Immunity Act's one-year statute of limitations.

The Tort Immunity Act is an affirmative defense, and plaintiffs need not anticipate or plead around affirmative defenses in their complaint. *Smith v. City of Chi.*, 143 F. Supp. 3d 741, 759 (N.D. Ill. 2015) (St. Eve., J.). Nevertheless, a plaintiff may allege "sufficient facts establishing any such affirmative defense or [plead] themselves out of court by including factual allegations that establish that they are not entitled to relief as a matter of law." *Id.* (cleaned up). Defendants identify several provisions of the Tort Immunity Act that may supply them with immunity, including the failure to diagnose. *See* 745 ILCS 10/6-106. But the parties agree that allegations of willful and wanton conduct would defeat immunity at this stage. *See* 745 ILCS 10/4-105 (exception for willful and wanton conduct). Willful and wanton conduct is "a course of action which shows an actual or

deliberate intention to cause harm, or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others." 745 ILCS 10/1-210. That is exactly what Sonntag alleges here.

Sonntag says the County Defendants treating James had access to his medical records from his previous incarceration, he told those Defendants he suffered from PTSD, anxiety, and depression, and was contemplating suicide. Nonetheless, the County Defendants ignored James' warnings. Additionally, Sonntag alleges the Sheriff's Office employees knew of the risk to James yet ignored his need to be placed in the RTU. Such allegations plausibly suggest Defendants willfully and wantonly ignored James' medical needs.

Defendants also argue Sonntag's allegations against the unnamed Defendants are barred under the Tort Immunity Act's statute of limitations. The Tort Immunity Act provides that no action "may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101(a). However, the Tort Immunity Act also includes a two-year statute of limitations for actions arising out of patient care. 745 ILCS 10/8-101(b). Defendants say the one-year limitations period applies because Sonntag's allegations do not arise out of patient care.

Regardless of which time period applies, Defendants' statute of limitations argument is premature. As Defendants admit, the Complaint, which was filed on the exact

13

one-year anniversary of James' death, is timely even under the one-year limitations period. The Complaint does not definitively establish that any acts before September 16, 2020, are barred by the statute of limitations. And Sonntag has not yet sought to amend the Complaint to name individual defendants, so the Court declines to dismiss the Complaint on a purported future failure to be able to amend the Complaint.[2] *See Herrera v. Cleveland*, 8 F.4th 493, 499 (7th Cir. 2021) (noting that suing an unnamed defendant based on a lack of knowledge of the proper defendant does not relate back to a timely filed complaint under Rule 15).

## **CONCLUSION**

For the reasons stated above, the Court grants-in-part Defendants' Motion to Dismiss (Dkt. # 13). Telephonic status set for 4/14/2022 at 10:10 a.m. It is so ordered.

Dated: 03/09/2022

_____
Charles P. Kocoras
United States District Judge

---

[2] Because we do not dismiss the claims against the individual defendants, we do not dismiss the indemnification claim.

14