UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRISTEN SONNTAG, as administrator of the estate of decedent, JAMES L. SONNTAG, and on behalf of decedent's next of kin,<br><br>Plaintiff,<br><br>v.<br><br>COOK COUNTY, Illinois, et al.,<br><br>Defendants. | 21 C 4935<br><br>Judge Charles P. Kocoras |

**ORDER**

Before the Court is Defendant Erick Duran's motion to dismiss [79]. For the following reasons, Duran's motion is granted.

**STATEMENT**

The following facts come from the complaint and are assumed true for the purpose of this motion. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Plaintiff's favor. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

Plaintiff Kristen Sonntag brings this action to recover for the suicidal death of her husband, James L. Sonntag, while detained at the Cook County Jail ("Jail") against Cook County, Sheriff Tom Dart, Duran, Robert Reimer, Yaser Shakeel, Lt. James Holmes, Mark Wolfe, Angel Vilella, Donald Pasqua, Shannon Williams, Chandra Perry, Antonio Valderas, Joseph Coppolillo, Robert Corse, William Schuld, and Michael Olaquez, Julian

Longoria, B. Smith, Usha Kartan, Alexandria Coutrakon, Wayne Kinzie, and Paul Skrivan. Kartan, Coutrakon, Kinzie, and Skrivan shall be referred to collectively as the "County Employees" and all other individuals (besides Dart) shall be referred to collectively as the "Sheriff Employees."

In 2016, James was diagnosed with post-traumatic stress disorder ("PTSD"), anxiety, and depression, and prescribed medication to treat these diagnoses. From September to November 2019, James was detained in the Jail while serving a 180-day sentence. During this detention, James was housed in the Jail's Residential Treatment Unit ("RTU") which was designed to house inmates with diagnosed medical and psychiatric conditions. During his health screening at the Jail in 2019, Kartan (a Cook County Health Services doctor) diagnosed James with anxiety and major depressive disorder ("MDD") and reported that he had a history of suicidal ideation. Kartan recommended that James be admitted to Tier 2N, an area within the RTU designed to be an acute care inpatient facility for male detainees at risk of suicide, for stabilization and treatment. James was housed in Tier 2N for at least a week during his 2019 detention, where he underwent therapy and was closely monitored. James suffered obvious symptoms of PTSD, anxiety, and depression during his 2019 detention. He received mental health treatment at the Jail, including from Kartan. Kartan and other County Employees documented in his medical chart James's mental health diagnoses, suicidal ideations, his placement in RTU and Tier 2N, and the medical health treatment James received.

In November 2019, James was released from the Jail on probation. As a condition of probation, James was required to wear an electronic monitoring device on his ankle, as well as undergo mental health treatment.

Ten months later, on September 14, 2020, James was taken into custody for an alleged probation violation based on the quality of his participation in a court-ordered mental health program. The alleged probation violation did not involve a new criminal case. Defendants Copolillo and Corse, both Sheriff Employees, took James into custody in the courtroom and were present when James's attorney told the judge that "this is going to kill this man to go back to custody" and "I don't know that he's going to survive this." The judge set James's bail at a $50,000 D-bond and ordered that if bond was posted, James was to be released on electronic home monitoring.

That same day, James underwent a pre-classification interview with Reimer, another Sheriff Employee, to determine where he should be housed inside of the Jail and what type of medical attention he might require. During the screening, James reported that he had previously been in mental health treatment and had had thoughts of or planned to hurt himself. Defendants Coutrakon, Kinzie, and Skrivan also participated in James's intake screening. Kartan examined and evaluated James for medical and psychiatric issues upon intake at the Jail. The County Employees had access to James's medical records from his 2019 detention and reviewed some or all of them.

During his 2020 intake, James told Reimer and the County Employees that he was diagnosed with PTSD, anxiety, and depression and took medicine to treat those conditions, and that he had a history of suicidal ideation. Kartan again diagnosed James with PTSD,

3

anxiety, and MDD, and reported that he had a history of suicidal ideation. James was not assigned to the RTU or to Tier 2N. After his intake, James was assigned to housing in the general population in Division 6, in a single cell by himself.

The same morning James was taken into custody, James's father posted his bond. James's father, childhood friend, and sister all followed up with Corse and/or Coppolillo and Longoria, Schuld, Olaquez, and Smith to inform them that James's father had posted bond and ascertain why James had not been released yet. One or more of the Sheriff Employees working at the Jail confirmed that James's bond had been paid in their computer system but stated that James was "not getting out any time soon."

While detained, James spoke to Plaintiff on the phone and stated, "I don't have much fight in me." Phone calls at the Jail are monitored and recorded by Jail staff.

On September 16, Defendant Duran was assigned to monitor Division 6, Tier 1K of the Jail, where James was housed. Jail policy required Duran to perform security checks on detainees every thirty minutes. But Duran did not check on James every thirty minutes, instead he only performed security checks approximately every one to three hours. Defendant Wolfe was Duran's supervisor that day. Defendants Shakeel, Holmes, Wolfe, and Vilella were on duty in Division 6 when James died.

In the afternoon of September 16, approximately 52 hours after James's bond was posted, Duran found James hanging dead inside his cell at the Jail. James had hanged himself with a sheet. He was still wearing a monitoring device on his ankle.

After finding James dead, Duran was unable to summon help immediately via the use of his radio, because his radio was not operational. Unable to use his radio, Duran had

4

to leave James alone while he went to the security office to notify his supervisors. Duran did not call 911 from the security office. Holmes arrived at James's cell and also did not call 911. Holmes ordered Shakeel to call 911, but he did not. Holmes and Vilella went to the office to find a defibrillator, but neither of them knew where it was, causing further delay in providing CPR to James. Wolfe also arrived at James's cell and did not call 911. On information and belief, the defibrillator was either not where it was supposed to be kept, or neither Holmes nor Vilella were adequately trained on where it was supposed to be kept.

Based on these events, Plaintiff brings the following claims: (1) failure to provide medical care under Section 1983 (Count I); (2) a municipal liability claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (Count II); (3) unlawful detention under Section 1983 (Count III[1]); (4) a *Monell* claim as to the electronic monitoring program (Count IV); (5) wrongful death under the Illinois Wrongful Death Act, 740 ILCS 180/1, *et seq*. (Count V); (6) willful and wanton negligence (Count VI); (7) intentional infliction of emotional distress (Count VII); and (8) indemnification (Count VIII).

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.,* 694 F.3d 873, 878 (7th Cir. 2012). The Court accepts as true well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The allegations in the complaint must set forth a "short and plain

---

[1] This count is erroneously labeled as a second "Count II", but we will refer to it as "Count III" herein. The proceeding counts are also mislabeled, so we will refer to the amended complaint's "Count III" as "Count IV", and so on.

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Duran moves to dismiss all claims against him under Rule 12(b)(6). These include Count I for failure to provide medical care under Section 1983, Count III for unlawful detention under Section 1983, and Counts V–VII alleging state law violations. He contends the Section 1983 claims fail to state a claim, and the Illinois state law claims are time-barred under the Illinois Tort Immunity Act's one-year statute of limitations. Plaintiff responded that she "did not intend to allege her unlawful detention claim or her state law claims against Defendant Duran." Dkt. # 95, at 4. We therefore dismiss Counts III and V–VII against Duran and address only Count I.

Duran argues that Plaintiff fails to sufficiently plead a failure to provide medical care claim against him because liability under Section 1983 "requires a defendant's

6

personal involvement in the alleged constitutional violation" and that the defendant "caused or participated in a constitutional deprivation." Dkt. # 80, at 3. Duran continues that to state a cognizable Eighth Amendment claim for medical mistreatment or denial of medical care, Plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id*. at 3–4.

According to Duran, the amended complaint contains no allegations against him individually to show that he was deliberately indifferent to James's serious medical needs, i.e., there are no allegations that Duran ever spoke with James before he committed suicide, participated in James's intake, or had any knowledge that James previously received mental health treatment. There are also no allegations that Duran assigned James to general population, that anyone informed Duran that James was at risk for suicide, or that Duran interacted with James's attorney, family, or friends. Rather, the only potentially relevant allegations are that James stated to Plaintiff on the phone that he didn't "have much fight" in him and that phone calls are monitored and recorded by Jail staff. Dkt. # 43, ¶¶ 77–78. Plaintiff alleges the Sheriff Employees, including Duran, "knew or should have known that [James] was suicidal, but failed to take reasonable steps to ensure he did not harm himself." *Id*., ¶ 79. Duran argues that because James never made that statement to him and Duran did not personally overhear that phone call, and because James was already dead when Duran found him, there are no allegations that Duran was deliberately indifferent to James's medical needs.

Plaintiff responds that her claim against Duran is adequately pleaded, and that Duran's motion addresses only "deliberate indifference" under the Eighth Amendment but

7

ignores any liability under the Fourteenth Amendment. Because James was a pretrial detainee, Plaintiff argues, the Fourteenth Amendment applies to Plaintiff's claim. Dkt. # 95, at 5 (citing *Miranda v. Cnty. of Lake*, 900 F.3d 335, 350 –54 (7th Cir. 2018)). Plaintiff, therefore, was only required to allege that Duran's conduct was "objectively unreasonable." *Id*. (citing *Davis v. Curran*, 2019 WL 1125789, at *2 (N.D. Ill. 2019)).

Plaintiff argues that she meets both the deliberate indifference and objectively unreasonable standard because she alleges that during James's intake with Jail staff, he reported having thoughts of or plans to harm himself, that he had a history of suicidal ideation, that he previously received mental health treatment, and that he took medication for PTSD, anxiety, and depression. Plaintiff also alleges that Reimer, "a fellow Sheriff's Deputy," entered those statements from James into an electronic classification questionnaire. *Id*. at 6. Based on these allegations, Plaintiff asserts, the "Court can make the reasonable inference that Defendant Duran had access to James' inmate file – and therefore had access to these statements and knew or should have been aware of them – because Defendant Duran was an employee of the Sheriff's Office and [James] was housed in the tier that Defendant Duran was responsible for monitoring." *Id*. at 6–7.

Plaintiff further asserts that she alleges Duran "did not even do the bare minimum required of him" because Jail policy required him to conduct security checks on the detainees in his tier every thirty minutes, and on the day of James's suicide, Duran only did so every one to three hours. *Id*. at 7. Duran also failed to make sure his equipment was working and therefore could not summon help when he found James in his cell.

8

In *Miranda*, the Seventh Circuit clarified that pretrial detainees' medical care claims are analyzed under the objective unreasonableness standard identified in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). Since *Miranda*, the Seventh Circuit has not decided whether an individual held on a pending probation violation "fits within the Eighth Amendment or the Fourteenth Amendment framework." *Wilford v. Plasse*, 2023 U.S. Dist. LEXIS 18258, at *7 n.2 (S.D. Ind. 2023) (quoting *Stockton v. Milwaukee Co.*, 44 F.4th 605, 614 n.3 (7th Cir. 2022)). Regardless of whether the Eight Amendment or Fourteenth Amendment standard applies, Plaintiff fails to sufficiently plead a claim for failure to provide medical care.

Under the Fourteenth Amendment, a challenge to a pretrial detainee's medical care "proceeds in two steps." *McCann v. Ogle Cty.*, 909 F.3d 881, 886 (7th Cir. 2018); *see also Jackson v. Sheriff of Winnebago Cnty.*, 74 F.4th 496, 502 (7th Cir. 2023). The first step "focuses on the intentionality of the individual defendant's conduct" and asks whether the defendant "acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of plaintiff's case." *McCann*, 909 F.3d at 886 (cleaned up). "A showing of negligence or even gross negligence will not suffice." *Id*. The second step asks whether the challenged conduct was objectively reasonable, and "requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Id*.

Under the Eighth Amendment, to show deliberate indifference the plaintiff must show that "he suffered from (1) an objectively serious medical condition to which (2) a

state official was deliberately, that is subjectively, indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (cleaned up).

Duran never met and knew nothing about James whatsoever, so we cannot say that he "acted purposefully, knowingly, or perhaps even recklessly" with respect to James's medical care. Plaintiff's allegations that James's medical history and needs were all recorded during his intake is not enough. Even if Duran had access to those records, there is no reason to believe Duran was required to read the file of every detainee under his supervision. Furthermore, James was not assigned to the RTU or to Tier 2N but to general population in a single cell by himself. This would indicate James did not need any particular care or attention above that of the general population.

With no knowledge of James's particular situation, Duran cannot be said to have acted purposefully, knowingly, or recklessly regarding his medical care. While his alleged failures to monitor the detainees as often as he was supposed to and to make sure his radio was working are certainly not ideal employee behaviors, they amount at most to negligence, which "will not suffice." *Id*. Nor do any of the above-described allegations amount to deliberate indifference.

## **CONCLUSION**

For the foregoing reasons, Duran's motion to dismiss [79] is granted and Counts I, III, and V–VII against Duran are dismissed. It is so ordered.

Dated: September 29, 2023

_Charles P. Kocoras_
Charles P. Kocoras
United States District Judge